COXE, Circuit Judge. The question involved upon this appeal is a close and interesting one but in view of our former decision in Steiff v. Bing, involving animals identical in appearance, we think the burden should be upon the defendants to prove that the animals which they purchased from Bing were not copied from those designed by the complainant. In other words, these defendants should not be permitted to sell to the public the toys which we held could not be sold by their vendor, until they have proved by witnesses who can be cross-examined that their animals were made without any aid from the complainant's animals. So far as the present record is concerned, we have little doubt that the person who designed the animals sold by the defendant had before him similar animals designed by the complainant's employés. The similarity is too great, even in minute details, to be the result of accident. In this way Bing has dispensed with original research. It has not been necessary for him to employ persons of originality and genius. Mere copyists and mechanics were all that he required. In this case, as in the former case, we cannot avoid the conclusion that the Bing toys were made with the Steiff toys as models. The small points of difference such as placing the orange patch of the terrier on the right instead of the left side rather accentuates the intent to get all of the advantages of the complainant's design without expending any original thought or labor thereon.

To state the situation in a few words, we think that after a preliminary injunction has been sustained by this court, the sale of the prohibited goods which are in all respects similar to those condemned should cease until the defendant has proved by witnesses who can be cross-examined that the defendant's goods were not copied from the complainant's. It may be that it can do this, but until it does it should suspend its sales. Enterprise Mfg. Co. v. Landers, Frary & Clark (C. C.) 124 Fed. 923; on appeal 131 Fed. 240, 65 C. C. A. 587; Yale & Towne Mfg. Co. v. Alder, 154 Fed. 37, 83 C. C. A. 149.

The order is reversed.

---

## THE BERN.

### (Circuit Court of Appeals, Second Circuit. April 7, 1914.)

### No. 227.

COLLISION (§ 93*)—STEAM VESSELS CROSSING—STARBOARD HAND RULE.

A decree finding a tug solely in fault for a collision between her tow and a crossing ferryboat in East River affirmed, where the starboard hand rule applied and it was the duty of the tug to keep out of the way.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 194, 195; Dec. Dig. § 93.*]

Appeal from the District Court of the United States for the Southern District of New York.

On appeal from a decree of the District Court for the Southern District of New York in favor of the libelant adjudging the tug Bern solely liable for damages sustained by the ferryboat Mineola by reason

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of a collision with one of the barges in tow of the tug. The Philadelphia and Reading Railway Company, claimant of the Bern, appeals. Affirmed.

Pierre M. Brown, of New York City, for appellant.
De Lagnel Berier, of New York City, for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The testimony as to the collision was taken in open court and presents a clear question of fact, the decision of which should not be disturbed unless we are clearly of the opinion that the trial judge was in error. The tug was about 250 feet from the pier line on the New York side and was destined for pier 28, East River. She had two loaded coal barges on her starboard side. The tide was strong ebb. The ferryboat came out from her slip on the Brooklyn side intending to cross to the slip on the New York side. At this time the tug was a little below the New York ferry slip, to which the Mineola was destined. The vessels were on crossing courses, the Bern had the Mineola on her own starboard side and the starboard hand rule was clearly applicable. We do not see why the Bern could not have stopped and backed on the ebb tide, or ported and gone astern of the Mineola. The trial judge was of the opinion that she could not have done this because she was not navigating in the middle of the river as required by the East River statute and was not permitted to plead a disability based upon her own violation of the law. We are, however, inclined to think that the violation of the East River statute had little to do with the collision. As the parties navigated with reference to each other, it would probably have happened, even if the Bern had been in the middle of the river. Wherever she was, it was the duty of the Bern to keep out of the way.

The decree is affirmed with costs.

---

## THE M. E. LUCKENBACH.

### THE HUGH KELLY.

(Circuit Court of Appeals, Second Circuit. April 28, 1914.)

### No. 250.

COLLISION (§ 110*)—STRANDING OF TOW—PROXIMATE CAUSE.

The stranding of a barge, which was one of three in a tow, after she had been cast off by the barge ahead, because of a slight collision with a schooner, so as to permit the schooner to pass through the tow, *held* due to the fault of her own master in not properly anchoring, as directed by the tug, and not to the collision.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 233; Dec. Dig. § 110.*]

Appeal from the District Court of the United States for the Eastern District of New York.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes